FILED
IN OPEN COURT

AUG 2 1 2025

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA | **FILED UNDER SEAL** |
| v. | Criminal No. 2:25-cr-105 |
| RODNEY THORNTON<br>a/k/a "Arod"<br>(Counts 1, 5, 11, 17, 23, 25), | 18 U.S.C. § 1349<br>Conspiracy to Commit Wire and Bank<br>Fraud<br>(Count 1) |
| STEVEN JONES III,<br>a/k/a "Wild" and "Wildboy"<br>(Counts 1, 6, 8-9, 18, 20-21, 25), | 18 U.S.C. §§ 1343 and 2<br>Wire Fraud<br>(Counts 2 - 13) |
| JAMAICA SUMNER<br>a/k/a "Fatty"<br>(Counts 1, 2, 12, 14, 24-25), | 18 U.S.C. §§ 1344 and 2<br>Bank Fraud<br>(Counts 14 - 24) |
| TROY DAVIS III<br>a/k/a "T-roy", "Fatt Boy" and "Troy"<br>(Counts 1, 5, 11, 13, 17, 23, 25), | 18 U.S.C. § 1956(h)<br>Conspiracy to Launder Money<br>(Count 25) |
| LATERRANCE PARKER JR.<br>a/k/a "TJ" "Jizz", "Jizzle" and "Dadon"<br>(Counts 1, 4, 8, 16, 20, 25), | 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and<br>982(a)(2)(A)<br>28 U.S.C. § 2461<br>Criminal Forfeiture |
| JORDAN PUGH<br>a/k/a "Lil T"<br>(Counts 1, 3-4, 7, 10, 15, 16, 19, 22, 25), | |
| LOIS STATON<br>a/k/a "Low Ball" and "Kelly"<br>(Counts 1, 25), | |
| JOY DAVIS<br>a/k/a "Joy Case"<br>(Counts 1, 3-4, 15, 16, 25), | |
| PERSIA BROWN<br>a/k/a "Alexis James", "Kendall White",<br>and "Kendal J"<br>(Counts 1, 6, 8-9, 18, 20, 21, 25), and | |

ANDREA HOLLEY
a/k/a "Lola,"
(Counts 1, 3-4, 15, 16, 25)

        Defendants.

## INDICTMENT
August 2025 Term -- At Norfolk, Virginia

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

At all times relevant:

1.    RODNEY THORNTON a/k/a "Arod" (THORNTON,) STEVEN JONES III a/k/a "Wild" and "Wildboy" (JONES,) JAMAICA SUMNER a/k/a "Fatty" (SUMNER,) TROY DAVIS III a/k/a "T-roy" and "Fatt Boy" (DAVIS III,) LATERRANCE PARKER JR. a/k/a "TJ" "Jizz" "Jizzle" and "Dadon" (PARKER,) JORDAN PUGH a/k/a "Lil T" (PUGH,) LOIS STATON a/k/a "Low Ball" and "Kelly" (STATON,) JOY DAVIS a/k/a "Joy Case" (DAVIS,) PERSIA BROWN a/k/a "Alexis James" "Kendall White" and "Kendal J" (BROWN,) and ANDREA HOLLEY a/k/a "Lola" (HOLLEY), and others known and unknown, respectively the "Conspirator" and collectively the "Conspirators," resided in the Eastern District of Virginia.

2.    Navy Federal Credit Union (NFCU) is a financial institution as defined by Title 18, United States Code, Section 20.   NFCU was a credit union with accounts insured by the National Credit Union Share Insurance Fund.

3.    NFCU is one of the largest credit unions in the United States, offering membership to members of the Armed Forces and their families. A full suite of financial products is provided to members, including checking accounts, savings accounts, and personal loans. Members can access their financial accounts remotely by mobile application. The mobile application allows

members to access current account balances, transfer funds from one account to another, transfer funds to outside financial institutions, and apply for consumer loans.

4.      Zelle is a financial services company that facilitates the direct transfer of funds between financial institutions. NFCU is a participating financial institution in the Zelle network, allowing members to transfer funds to other NFCU members or transfer funds to NFCU non-members at outside financial institutions. Zelle is available to NFCU members through the NFCU mobile application.

5.      Cash App, a company of Block Inc., is a financial services platform that provides account holders access to peer-to-peer payments, direct deposit, and other services available through the Cash App mobile application. A Cash App account is linked to an account holder's bank account to facilitate the transfer, withdrawal, and deposit of funds. When funds are transferred to a Cash App account from a financial institution, those transactions are sent via wire to a local server and then replicated to all other physical servers within the Cash App supporting infrastructure. Cash App servers include data centers located in: 1) San Jose, California, 2) Ashburn, Virginia, and 3) Tokyo, Japan.

6.      NFCU offers its members a financial product referred to as a Personal Expense Consumer Loan (PEC). The PEC is a personal loan that a member may apply for via the NFCU mobile application and receive funds deposited directly into their chosen NFCU banking account within minutes of completing the application.  The PEC loan server is located in San Antonio, Texas.

7.      Since at least January 2023 through the present, in the Eastern District of Virginia, including the cities of Portsmouth, Chesapeake, Suffolk, Virginia Beach, and Norfolk, and elsewhere, fraud schemes have been prevalent that are perpetuated in parking lots near NFCU branches. The fraudsters would target victims in publicly accessible places, including parking lots,

gas stations, shopping districts, and gyms, and convince victims, through deceit and intimidation, to give the fraudsters access to the victims' mobile devices. The fraudsters would then make unauthorized loan applications, financial disputes, transfers, and withdrawals from the victims' accounts via the NFCU mobile application. Within the Eastern District of Virginia, over five hundred (500) victim reports have been made, with an aggregated loss of at least two million dollars ($2,000,000).

COUNT ONE
(Conspiracy to Commit Wire and Bank Fraud)

8.      Preceding allegations and statements are realleged and incorporated as if set forth fully herein.

9.      Between in or about October 2023, and continuing to at least in or about April 2025, in the Eastern District of Virginia and elsewhere, RODNEY THORNTON, STEVEN JONES III, JAMAICA SUMNER, TROY DAVIS III, LATERRANCE PARKER JR., JORDAN PUGH, LOIS STATON, JOY DAVIS, PERSIA BROWN, and ANDREA HOLLEY, the defendants, along with others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree with each other and others known and unknown, to commit the following offenses:

a.      Wire Fraud: Defendants, and others known and unknown, having devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted, and attempted the same, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of execution of such scheme and artifice, in violation of Title 18, United States Code, Section 1343, and;

b.      Bank Fraud: Defendants, and others known and unknown, knowingly and intentionally executed and attempted to execute a scheme and artifice to defraud and to obtain monies, funds, credits, assets, securities, and other property owned by and under the custody and

4

control of a financial institution as defined under Title 18, United States Code, Section 20, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

<u>OBJECT OF THE CONSPIRACY, SCHEME AND ARTIFICE TO DEFRAUD</u>

10.    The object of the scheme and artifice to defraud was for THORNTON, JONES, SUMNER, DAVIS III, PARKER, PUGH, STATON, DAVIS, BROWN, HOLLEY, and others known and unknown, to fraudulently obtain funds to which they were not entitled by deceit and intimidation, namely by obtaining access to victims' NFCU banking accounts, submitting fraudulent loan applications to NFCU in the victims' name, and creating financial disputes, transfers, and withdrawals from victims' accounts, and transferring the loan proceeds to themselves.

<u>WAYS, MANNER AND MEANS OF THE CONSPIRACY, SCHEME AND ARTIFICE TO DEFRAUD</u>

11.    Conspirators effectuated the conspiracy through numerous forms of deceit and intimidation to obtain access to the victim's mobile devices and the financial institution and financial services mobile applications located on the device. This occurred primarily through a "parking lot scam" where Conspirators would strategically approach a victim and convince the victim to give the Conspirator access to their mobile device in a parking lot.

12.    Conspirators generally targeted a victim, referenced as a "mark," whom they identify as probable account holders with NFCU, with such identifying characteristics as military age males who appear non-confrontational.

13.    Conspirators generally approached the mark in a public setting, such as a gas station or a parking lot, typically from within a rental vehicle leased under the name of a Conspirator, holding multiple adult males, and sometimes minor children.

14.    Conspirators generally designated a "talker," otherwise referred to as a "dragger," who approached the mark and initiate a conversation. The dragger then asked the mark if they have an NFCU account or are a member of NFCU. If the mark responded affirmatively, the talker then presents a falsity that they cannot access their own NFCU account at the automated teller machine (ATM) or are otherwise in need of financial assistance.

15.    If the mark agreed to assist the dragger, the dragger offered to compensate the mark with money provided through a peer-to-peer payment by way of financial services applications, such as Zelle or Cash App. The dragger then convinced the mark to convey the victim's mobile device so that the dragger could access his own account to send the mark compensation.

16.    Conspirators then made unauthorized transactions from the victim's accounts to the accounts of Conspirators and others known and unknown and obtained the personally identifiable information (PII) and financial information of the victim.

17.    Conspirators escalated tactics when a mark would not comply with their initial ruse. The dragger continued to urge compliance, in some instances by physically taking the mobile device from the mark and holding it to the mark's face to obtain biometric access. In another instance, a Conspirator in the vehicle made a firearm visible to the mark.

18.    Once in possession of the victim's mobile device, Conspirators who were outside the vehicle or who remained in the vehicle would act as the "phone controller" and execute a variety of illicit acts to obtain funds from the victim, dependent on the situation, including but not limited to:

      a.    Conspirators submitted fraudulent PEC loan applications to NFCU via the victim's NFCU mobile application, directing the funds to be deposited into a victim's savings account, thereafter transferring the funds to the victim's checking account to conceal the funds originated from a loan disbursement;

b. Conspirators disputed large debits in the victims' banking accounts, and NFCU would temporarily credit the victim's account for the disputed funds, which increased the funds available in the victim's account for the Conspirator to unlawfully obtain;

c. Conspirators accessed and transferred a victim's PII to Conspirators;

d. Conspirators obtained the victim's log-in information for financial accounts and provided to Conspirators;

e. Conspirators accessed and transferred the victim's banking information to other Conspirators; and

f. Conspirators transferred funds from the victim's Cash App account(s) to account(s) accessible by, or under the name of, Conspirators.

19.    After a phone controller executed illicit acts on a victim's mobile device, the Conspirators then misled the victim by stating that the Conspirator had transferred too much money back to the victim, showing the increased funds available in the victim's checking account. The Conspirators then requested the alleged "excess" funds from the victim and obtained the excess funds from the victims.   Returns were made by:

a. Cash App, providing the Cash App account of a Conspirator, or another victim, to the victim;

b. Zelle, providing the Zelle information of a Conspirator, or another victim, to the victim; and / or

c. NFCU member-to-member transfer to an NFCU account of a Conspirator, or another victim.

20.     In situations where a victim's account had a limit on the amount of funds that could be transferred in a single day, such as Cash App, the Conspirators would urge the victim to obtain a money order from a store, or cash from an ATM, while they followed the victim.

21.     As the Conspirators had obtained the PII of the victim, when a victim became aware that they were being defrauded, the Conspirators would contact the victim, up to days after the incident, stating words to the effect that the Conspirators knew where the victim lived and alleging that the victim had "their" (the Conspirators) money.

22.     Conspirators concealed their illicit acts by covering their digital footprint on the victim's device, including deleting email notifications of the fraudulent loans, the Cash App transfers, and other financial transactions. In some instances, the Conspirators would delete the banking mobile applications and return the victims' mobile device to them in airplane mode, whereby a victim would not receive cellular signal and be notified of any recent transactions until they manually resumed connectivity of their mobile device.

23.     Conspirators concealed illicit funds by having the initially obtained funds transferred to a co-Conspirator's financial account, including NFCU, Venmo and Cash App. The funds would then be disbursed between multiple Conspirators and accessed in a variety of means, including transfers, cash withdrawals using ATMs, and by expenditures of multiple Conspirators' use of the same banking account. The Conspirators would use the accounts of victims to transfer funds, adding another layer of concealment.

(In violation of 18 U.S.C. §§ 1349, 1343, and 1344.)

8

## COUNTS TWO-THIRTEEN
### (Wire Fraud)

24.    Preceding allegations and statements contained in the entirety of this Indictment are realleged and incorporated as if set forth fully herein.

25.    On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, defendants RODNEY THORNTON, STEVEN JONES III, JAMAICA SUMNER, TROY DAVIS III, LATERRANCE PARKER JR., JORDAN PUGH, LOIS STATON, JOY DAVIS, PERSIA BROWN, ANDREA HOLLEY, and others known and unknown, knowingly transmitted, caused to be transmitted, and attempted to transmit, by means of a wire communication in interstate and foreign commerce certain writings, signs, signals, pictures and sounds, and did aid and abet the same, as follows:

| COUNT | DATE (ON OR ABOUT) | ITEM WIRED |
|---|---|---|
| 2 | October 18, 2023 | SUMNER, aided and abetted by others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application to Navy Federal Credit Union, in the amount of $3,500, in the name of VICTIM 1 |
| 3 | January 15, 2024 | PUGH, aided and abetted by DAVIS, HOLLEY, and others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 2 |
| 4 | January 31, 2024 | PUGH, aided and abetted by DAVIS, HOLLEY, PARKER, and others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 3. |
| 5 | February 24, 2024 | THORNTON and DAVIS III, aided and abetted by others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 4. |

| 6 | February 26, 2024 | JONES, aided and abetted by BROWN and others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $8,000, in the name of VICTIM 5. |
| 7 | March 1, 2024 | PUGH, aided and abetted by others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 6. |
| 8 | March 8, 2024 | JONES, aided and abetted by PARKER, BROWN, and others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 7. |
| 9 | March 19, 2024 | JONES, aided and abetted by BROWN and others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 8. |
| 10 | June 14, 2024 | PUGH, aided and abetted by others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $5,000, in the name of VICTIM 9. |
| 11 | June 17, 2024 | DAVIS III, aided and abetted by THORNTON and others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of $5,000, in the name of VICTIM 10. |
| 12 | November 19, 2024 | SUMNER, aided and abetted by others known and unknown, transmitted a fraudulent Personal Expense Consumer Loan application, in the amount of approximately $4,155, in the name of VICTIM 11. |
| 13 | April 14, 2025 | DAVIS III, aided and abetted by others known and unknown, transmitted a fraudulent financial transaction, to wit: unauthorized Cash App transfer in the amount of $5,000, from the account of VICTIM 12. |

(In violation of Title 18, United States Code, Sections 1343 and 2).

## COUNT FOURTEEN – TWENTY-FOUR
(Bank Fraud)

26.     Preceding allegations and statements contained in the entirety of this Indictment are realleged and incorporated as if set forth fully herein.

27.     On or about the dates set forth below, in the Eastern District of Virginia and elsewhere, defendants RODNEY THORNTON, STEVEN JONES III, JAMAICA SUMNER, TROY DAVIS III, LATERRANCE PARKER JR., JORDAN PUGH, LOIS STATON, JOY DAVIS, PERSIA BROWN, ANDREA HOLLEY, and others known and unknown, did knowingly and intentionally for the purpose of executing the described scheme and artifice to defraud and to obtain moneys, funds, credits, assets, securities and other property owned by and under the custody and control of Navy Federal Credit Union, which is as a financial institution as defined under Title 18, United States Code, Section 20, executed and attempted to execute each transaction described below by means of materially false and fraudulent pretenses, representations, and promises, and did aid and abet the same:

| Count | Date (on or about) | Description of Transaction |
|---|---|---|
| 14 | October 18, 2023 | SUMNER, aided and abetted by others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application in the amount of $3,500, in the name of VICTIM 1, to Navy Federal Credit Union. |
| 15 | January 15, 2024 | PUGH, aided and abetted by DAVIS, HOLLEY, and others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 2, to Navy Federal Credit Union. |
| 16 | January 31, 2024 | PUGH, aided and abetted by DAVIS, HOLLEY, PARKER, and others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 3, to Navy Federal Credit Union. |
| 17 | February 24, 2024 | THORNTON and DAVIS III, aided and abetted by others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 4, to Navy Federal Credit Union. |
| 18 | February 26, 2024 | JONES, aided and abetted by BROWN and others known and unknown, submitted a fraudulent Personal Expense Consumer |

| | | |
|---|---|---|
| | | Loan application, in the amount of $8,000, in the name of VICTIM 5, to Navy Federal Credit Union. |
| 19 | March 1, 2024 | PUGH, aided and abetted by others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 6, to Navy Federal Credit Union. |
| 20 | March 8, 2024 | JONES, aided and abetted by PARKER, BROWN, and others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 7, to Navy Federal Credit Union. |
| 21 | March 19, 2024 | JONES, aided and abetted by BROWN and others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $6,000, in the name of VICTIM 8, to Navy Federal Credit Union. |
| 22 | June 14, 2024 | PUGH, aided and abetted by others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $5,000, in the name of VICTIM 9, to Navy Federal Credit Union. |
| 23 | June 17, 2024 | DAVIS III, aided and abetted by THORNTON and others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $5,000, in the name of VICTIM 10, to Navy Federal Credit Union. |
| 24 | November 19, 2024 | SUMNER, aided and abetted by others known and unknown, submitted a fraudulent Personal Expense Consumer Loan application, in the amount of $4,155, in the name of VICTIM 11, to Navy Federal Credit Union. |

(In violation of Title 18, United States Code, Sections 1344 and 2.)

## COUNT TWENTY-FIVE
(Conspiracy to Launder Monetary Instruments)

28.    The General Allegations and preceding allegations and statements contained in the entirety of this Indictment are realleged and incorporated as if set forth fully herein.

29.    From in or about October 2023 to in or about May 2025, in the Eastern District of Virginia and elsewhere, defendants RODNEY THORNTON, STEVEN JONES III, JAMAICA SUMNER, TROY DAVIS III, LATERRANCE PARKER JR., JORDAN PUGH, LOIS STATON, JOY DAVIS, PERSIA BROWN, ANDREA HOLLEY, and others known and unknown, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to commit an offense in violation of Title 18, United States Code, Section 1956, to wit: Laundering of monetary instruments, that is, to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire and bank fraud, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i).

(In violation of Title 18, United States Code, Sections 1956(h).)

## CRIMINAL FORFEITURE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

30.     The defendants, if convicted of the violation alleged in Count One of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2:

      a.   As to the wire fraud object, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation; and

      b.   As to the bank fraud object, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation.

31.     The defendants, if convicted of any of the violations alleged in Counts Two through Thirteen of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

32.     The defendants, if convicted of any of the violations alleged in Counts Fourteen through Twenty-Four of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the violation.

33.     The defendants, if convicted of the violation alleged in Count twenty-five of this Indictment, shall forfeit to the United States, as part of sentencing pursuant to Federal Rule of Criminal Procedure 32.2, any property, real or personal, involved in the violation, and any property traceable to such property.

34.     If any property that is subject to forfeiture above is not available, it is the intention of the United States to seek an order forfeiting substitute assets pursuant to Title 21, United States Code, Section 853(p) and Federal Rule of Criminal Procedure 32.2(e.).

(In accordance with 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), 982(a)(2)(A) and 28 U.S.C. § 2461.)

*United States v. RODNEY THORNTON, et al.*
Criminal No. 2:25-cr-___ 105

Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

A TRUE BILL:

REDACTED COPY

_____
FOREPERSON


ERIK S. SIEBERT
UNITED STATES ATTORNEY

By: _____
Jeremy McKinnon
Special Assistant United States Attorney
Clayton D. LaForge
Assistant United States Attorney
Virginia Bar No.: 84075
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number - 757-441-6331
Facsimile Number - 757-441-6689
E-Mail Address – jeremy.mckinnon@usdoj.gov

16